**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOSETTE M. WAKELEY, | : | CIVIL ACTION NO. **1:CV-12-2610** |
| | : | |
| Plaintiff | : | (Judge Caldwell) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| SUPERINTENDENT GIROUX, *et al.*, | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

### I.   BACKGROUND.

On December 28, 2012, Plaintiff Josette Wakeley, formerly an inmate of the State Correctional Institution in Muncy, Pennsylvania ("SCI-Muncy"), filed, through counsel, the instant civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1).  Plaintiff basically asserted a failure to protect claim under the Eighth Amendment regarding an assault on her by another inmate on March 3, 2011, at SCI-Muncy.  Plaintiff paid the filing fee. It appears that Plaintiff is presently confined at SCI-Cambridge Springs.

Since Plaintiff alleges violations of her constitutional rights and brings this civil rights action under §1983, this Court has jurisdiction pursuant to 28 U.S.C. §1331 and §1343. Venue is proper in this Court since Plaintiff was confined in the Middle District of Pennsylvania, Defendants are located in this district and, the  actions allegedly violating her constitutional rights occurred in this district.

Plaintiff named as a Defendant SCI-Muncy Superintendent Nancy Giroux[1] and five Jane/John Doe Defendants.  (*Id.*).  Defendant Giroux was served with Plaintiff's Complaint and counsel entered an appearance for this Defendant.  Plaintiff initially sued Defendant Giroux in her official and individual capacities, but voluntarily withdrew the claim against Defendant Giroux in her official capacity.  (Doc. 1, ¶ 2; Doc. 13-1, p. 5).  Plaintiff asserted  three counts in her original Complaint: 1) a constitutional violation by Defendant Giroux relating to policy, custom, and practice with regard to housing within SCI-Muncy; 2) a failure by Defendant Giroux to adequately supervise and train prison staff; and 3) deliberate indifference by the unnamed Defendants for failing to protect her from an assault by another inmate. (Doc. 1, pp. 6-9).

We issued an Order directing Plaintiff  to identify her  Doe Defendants and we then extended the time to do so.  (Docs. 7 & 9).  We subsequently issued an Order on June 28, 2013, and gave Plaintiff until August 13, 2013, to name the Doe Defendants.  (Doc. 15).

On March 25, 2013, Defendant Giroux filed a Motion to Dismiss Plaintiff 's original Complaint.  (Doc. 11).  On April 8, 2013, Defendant Giroux filed a Brief in Support of her Motion.  (Doc. 12).  On April 19, 2013, Plaintiff filed a Brief in Opposition to Defendant Giroux's Motion to Dismiss. (Doc. 13).

On August 6, 2013, Plaintiff filed an Amended Complaint.  (Doc. 16).  Plaintiff named the following as Defendants: Superintendent Giroux; Sgt. Hicks, Unit Sergeant; Dale Wertman,

---

[1]Plaintiff misspelled Defendant Superintendent's name as Giraux.  We  use the proper spelling of this Defendant which is "Giroux."

Counselor; Marci Boyer, Counselor Supervisor; Steve Tolomay, Unit Manager; Sgt. Flick, Control Center Sergeant; Wendy Nicholas, Deputy Superintendent for Centralized Services; and Robert Smith, Deputy Superintendent for Facilities Management.  All eight (8) Defendants were employed by the PA Department of Corrections ("DOC") as SCI-Muncy during the relevant times of this case.

On August 12, 2013, we issued a Report and Recommendation regarding Defendant Giroux's Motion to Dismiss Plaintiff 's original Complaint and we recommended that Giroux be dismissed with prejudice.  (Doc. 17).   Plaintiff filed objections to our R&R.  (Doc. 19).

 On August 20, 2013, all eight Defendants jointly filed a Motion to Dismiss Plaintiff's Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6).  **(Doc. 23)**.  Defendants basically argued that Plaintiff 's Eighth Amendment failure to protect claim should be dismissed since Plaintiff failed to properly state that they were deliberately indifferent to Plaintiff's safety, that they were all personally involved with Plaintiff 's claim, and that Plaintiff 's injury resulted from a specific policy or lack of supervision.   While Defendants did not raise the exhaustion issue in their Motion to Dismiss with respect to Plaintiff 's instant constitutional claims, they did repeatedly state that Plaintiff did not file a grievance complaining about inmate Houston prior to the March 3, 2011 assault.   Defendants' Doc. 23 Motion to Dismiss Plaintiff's Amended Complaint was briefed but, to date,  it has not been decided by the Court.

On September 25, 2013, the Court issued an Order and rejected our Doc. 17 R&R as moot and, denied  Defendant Giroux's Doc. 11 Motion to Dismiss as moot since Plaintiff filed an Amended Complaint.  (Doc. 28).

We then issued an Order directing service of Plaintiff's Amended Complaint on the eight Defendants.  (Doc. 29).  Defendants were served and on October 30, 2013, they jointly filed a Motion for Summary Judgment.  **(Doc. 31).**  Defendants simultaneously filed their support brief and their 18-paragraph Statement of Material Facts ("SMF"). (Docs. 32 & 33).  Defendants also filed an Appendix of Exhibits (A-F).  (Doc. 34).  On November 20, 2013, Plaintiff filed her opposition brief with attached Exhibits.  (Docs. 35, 35-2 & 35-3).  Plaintiff also filed her Response to Defendants' SMF with her Supplemental SMF.  (Doc. 35-1).  On December 4, 2013, Defendants filed their reply brief and a Supplemental Appendix of Exhibits (G-M).  (Docs. 36 & 37).

In this R&R, we address Defendants' **Doc. 31** Motion for Summary Judgment which is ripe for disposition.  We have been assigned this case for pre-trial matters.

## II.    ALLEGATIONS OF AMENDED COMPLAINT DOC. 16.

Plaintiff, who was serving a parole violation sentence, arrived at SCI-Muncy on February 28, 2011, and was placed in a cell with inmate Corrine Houston.  Plaintiff averred that the decision to place her in a cell with Houston was made by Defendants Hicks, Wertman, Tolomay, Boyer, and Flick, pursuant to a policy, pattern, practice and/or custom and which was approved by supervisory Defendants  Giroux, Nicholas, and Smith.  (Doc. 16, ¶'s 13-14).  Plaintiff alleges that Defendants knew Houston had a  violent past, especially toward females, and suffered from a serious mental illness.  Plaintiff avers that Houston stabbed her former female lover and in 2007, Houston killed her female lover.  Plaintiff states that after Houston killed her female lover and she threw the body from a third story window before going

downstairs to dismember the corpse. Plaintiff states that Houston was convicted of violating a protection from abuse order, defiant trespass, stalking, criminal mischief, terroristic threats, and first degree murder. Plaintiff states that in April 2010, Houston received a life sentence. Plaintiff avers that Houston also violently assaulted her sister. (Doc. 16, ¶¶ 16-18). Plaintiff states that Judge Bronson of the Court of Common Pleas in Philadelphia indicated in Houston's sentencing order in March 2008 that Houston's incarceration should be monitored by the Mental Health Unit and that Houston required psychiatric care including anger management.

Plaintiff alleges that prior to being placed in a cell with Houston, it was recommended that Houston be placed in a cell alone on "Z" Code status, but that this recommendation was rejected by Defendants and Houston was celled with Plaintiff. (Doc. 16, ¶¶ 19-22). Prior to the March 3, 2011 assault, Plaintiff avers that Houston was sexually aggressive toward her, tried to hug and kiss her, and indicated to Plaintiff that she wanted a romantic relationship with Plaintiff. Plaintiff states that she rejected Houston's advances. (Doc. 16, ¶'s 23-24). "Plaintiff did not however file a grievance/complaint about Houston's aggressive sexual advances due to the fact that there were no request slips on the block and in her experience, requests to be re-celled were not honored." (Doc. 16, ¶ 25).

On March 3, 2011, Plaintiff avers that Houston made a sexual advance at her and she rebuked Houston. Houston swore at Plaintiff and then grabbed Plaintiff around the neck and began choking Plaintiff until Plaintiff passed out. When Plaintiff was unconscious, Houston stripped Plaintiff's clothes, attempted to sexually assault Plaintiff, beat her with a padlock, bit her hard enough to leave marks, and attempted to drown her in a toilet. (Doc. 16, ¶'s 26-28).

Plaintiff avers that Houston then rang the alert button and yelled to staff to get Plaintiff, and that she thought Plaintiff was dead.  Prison staff found Plaintiff lying unconscious in a pool of blood.  Plaintiff was life-flighted to Geisinger Medical Center and remained in the hospital for three days.  (Doc. 16, ¶'s 29-30).

As a result of the assault, Plaintiff alleges that she suffered severe injuries, that she continues to suffer from pain, and that she suffered severe emotional injury.  Plaintiff also states that her suffering, both physical and mental, will likely continue in the future.  (Doc. 16, ¶'s 31-32 & 35).

Plaintiff avers that after she left the hospital, she was returned to SCI-Muncy and placed in the prison infirmary for about 1½ months.  Plaintiff notes that on May 9, 2011, she was released from DOC custody to a halfway house.[2]  (Doc. 16, ¶ 33).

Plaintiff avers that as a result of the assault, Houston was charged with several offenses, and on March 20, 2012, Houston pled guilty to Attempted First Degree Murder.  Plaintiff states that Houston was sentenced to 168 months to 480 months in prison.  (Doc. 16, ¶34).

In Count I, Plaintiff claims that Defendants had a policy regarding classification and/or housing of inmates which violated her Eighth Amendment rights. In Count II, Plaintiff clams that Defendants failed to properly train and supervise their staff which caused her to be celled with Houston.  In Count III, Plaintiff claims that Defendants Boyer, Wertman, Tolomay, Flick and

---

[2]As indicated above, it appears that Plaintiff is currently confined at SCI-Cambridge Springs, Crawford County, PA, and in the DOC's custody. (Doc. 35-3, p. 21).  In her Affidavit, Plaintiff averred that she was scheduled to be released from SCI-Cambridge Springs on December 12, 2013, but we do not find any indication in the record that she was released from prison.  (*Id.*, p. 25).

Hicks were deliberately indifferent to her serious safety needs.

As relief with respect to her three Counts, Plaintiff seeks compensatory damages as well as costs and attorney's fees.  Inso far as Plaintiff seeks damages from the state actor Defendants, she correctly only sues Defendants in their individual capacities.

## III.    STANDARDS OF REVIEW.

### A.  Summary Judgment Standard

A motion for summary judgment may not be granted unless the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56.  The court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact.  Fed.R.Civ.P. 56(c).  An issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  A fact is "material" if proof of its existence or non-existence could affect the outcome of the action pursuant to the governing law.  *Anderson*, 477 U.S. at 248.  "Facts that could alter the outcome are material facts." *Charlton v. Aramus Bd. of Educ.*, 25 F. 3d 194, 197 (3d Cir.), *cert. denied*, 513 U.S. 1022 (1994).

The burden of proving that there is no genuine issue of material fact is initially upon the movant.  *Forms, Inc. v. American Standard, Inc.*, 546 F. Supp. 314, 320 (E.D. Pa. 1982), *aff'd mem.* 725 F.2d 667 (3d Cir. 1983).  Upon such a showing, the burden shifts to the nonmoving party.  *Id*.  The nonmoving party is required to go beyond the pleadings and by affidavits or by

"depositions, answers to interrogatories and admissions on file" designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White v. Westinghouse Electric Company*, 862 F.2d 56, 59 (3d Cir. 1988). In doing so, the court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. *Id.*, *quoting Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), *cert. denied,* 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976) *cert. denied*, 429 U.S. 1038 (1977).

Under Rule 56 summary judgment must be entered where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Moreover, the Third Circuit has indicated that "although the party opposing summary judgment is entitled to 'the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact,' and 'cannot rest solely on assertions made in the pleadings, legal memorandum or oral argument.'" *Goode v. Nash*, 2007 WL 2068365 (3d Cir. 2007)(Non-Precedential)(citation omitted).

Thus, "summary judgment is proper, when, viewing the evidence in the light most favorable to the non-movant, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. General Motors*, 2009 WL 237247, *2

(3d Cir.)(citation omitted); *Page v. Trustees of Univ. of Pennsylvania*, 222 Fed. Appx. 144 at 145 (3d Cir. 2007) (the court must "view the facts in the light most favorable to the party opposing the [summary judgment] motion when making [its] determination."); *Burlington v. News Corp.*, 759 F.Supp. 2d at 589-90.

### B.  § 1983 Standard

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements:  (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States.  *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993).  Further, Section 1983 is not a source of substantive rights.  Rather, it is a means to redress violations of federal law by state actors.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).  *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa. 2005); *Slater v. Susquehanna County*, 613 F. Supp. 2d 653, 660 (M.D. Pa. 2009) (citations omitted); *Stankowski v. Farley*, 487 F. Supp. 2d 543, 550 (M.D. Pa. 2007) ("only those who act under color of state law are liable to suit under section 1983.").  "In order to satisfy the second prong [of a §1983 civil rights action], a Defendant does not have to be a state official, but can also be held liable as a state actor."  *Slater v. Susquehanna County*, 613 F. Supp. 2d at 660(citations omitted).

Furthermore, it is well-established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*.  *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082

(3d Cir. 1976); *Parratt, supra*.   It is also well-settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a §1983 case, and that a complaint must allege such personal involvement.   *Id.* Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based.   *Id.*  As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

A civil rights complaint must state time, place, and responsible persons.  *Id.*  Courts have also held that an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to section 1983 liability. *See Rode,* 845 F.2d at 1208.

## IV.    MATERIAL FACTS.

As mentioned, pursuant to Local Rule 56.1, M.D. Pa., Defendants properly submitted their SMF (Doc. 33) with their Summary Judgment Motion, and Defendants cited to evidence in the record to support their SMF. Plaintiff filed her Response to Defendants' SMF. (Doc. 35-1).   Plaintiff also included with her Response  Supplemental SMF and in support of them, largely cites to her Affidavit (Doc. 35-3, pp. 21-26).  Plaintiff also cites to DOC administrative remedy policy DC-ADM 804 as well as to her prison medical records which she submitted.

10

Initially, we find that paragraphs 1-7 of Defendants' SMF simply contain the procedural background of this case, which we have discussed above.   We find that paragraphs 8-18 of Defendants' SMF  are proper material facts and are relevant to this case.[3]  As stated, Plaintiff responded to ¶'s 1-18 of Defendants' SMF and asserted her own Supplemental SMF, paragraphs 19-37.

With respect to ¶'s 8 and 9 of Defendants' SMF, we take judicial notice that the Third Circuit has found three reviewing stages within the Pennsylvania DOC's grievance system: "Initial Review (DC-ADM-804 Part VI.B), which addresses the inmate's filed grievance; the first appeal from the Initial Review, known as Appeal to Facility Manager (DC-ADM-804 Part VI.C); and a second and final appeal, the Appeal to Secretary's Office of Inmate Grievances and Appeals (DC-ADM-804 Part VI.D)." *Spruill v. Gillis,* 372 F.3d 218, 232 (3d Cir. 2004); *Daniels v. Kelchner*, 2009 WL 743577, *5 (M.D.Pa. March 18, 2009)(PA DOC policy, DC-ADM 804, "provides for three levels of administrative review" of a inmate's grievance).[4]

With respect to ¶'s 10 through 18 of Defendants' SMF, we find them to be supported by Defendants' evidence, mainly, the Declaration of Lesley Lucas, SCI-Muncy Assistant to the Superintendent.   We also find that Plaintiff denies some of these SMF, and she also states that "[f]acts unavailable to [her] to either confirm or deny" and that "[n]o discovery has yet taken place in this case."  Further, Plaintiff requests the opportunity under Rule 56(d) to depose Ms.

---

[3]"Material facts" are those which might affect the outcome of the suit.  *Justofin v. Metropolitan Life Ins. Co.*, 372 F.3d 517, 521 (3d Cir. 2004).

[4]We note that Defendants submitted a copy of PA DOC Inmate Grievance Policy, DC-ADM 804, as Ex. B to their Doc. 34 Appendix.

Lucas before the Court decides Defendants' Summary Judgment Motion.  We do not find it necessary to allow Plaintiff to depose Ms. Lucas before the Court decides Defendants' Summary Judgment Motion since Plaintiff does not  dispute the ultimate averment of Ms. Lucas that Plaintiff did not file a grievance with respect to the March 3, 2011 assault.  (Doc. 35-1, ¶ 18).  We also find that the evidence submitted by the parties is more than sufficient to decide Defendants' Summary Judgment Motion.

**V.      DISCUSSION**.

Initially, Plaintiff seeks the Court to strike Defendants' Summary Judgment Motion since Defendants failed to raise the exhaustion issue in their pending, ripe Motion to Dismiss Plaintiff's Amended Complaint.  We find that Defendants properly raise the exhaustion issue in their instant Summary Judgment Motion notwithstanding Defendants' failure to raise this issue in their pending Motion to Dismiss which was filed first.

There is no doubt that "failure to exhaust is an affirmative defense that must be pled and proven by the Defendant."  *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002)(citing *Ray v. Kertes*, 285 F.2d 287, 295 (3d Cir. 2002)).  In *Ray*, the Third Circuit held that a Defendant could raise the exhaustion issue either by a Motion to Dismiss, "in appropriate cases," or by a Motion for Summary Judgment.  *See Ray v. Kertes*, 285 F.2d at 295  n. 8.  In fact, as Defendants point out, Plaintiff Wakeley did not allege any facts in her pleadings relating to exhaustion of her claims with respect to the March 3, 2011 assault incident at SCI-Muncy.  Even though the Supreme Court has held in *Jones v. Block*, 549 U.S. 199 (2007), that a Plaintiff is not required to plead exhaustion, it would not have been appropriate for our Defendants to raise the

exhaustion defense in a motion to dismiss since it did not appear on the face of Plaintiff Wakeley's Complaints. *See Ball v. SCI Muncy*, 385 Fed.Appx. 211, 213 (3d Cir. 2010).  Thus, in some cases, the exhaustion defense must be demonstrated by the Defendants  using evidence outside of the pleadings and in such cases, like the present case, it is appropriate for Defendants to raise and prove the exhaustion issue by a Summary Judgment Motion.

In the present case, both Plaintiff and Defendants have submitted numerous exhibits outside of the pleadings to support their positions regarding the exhaustion issue. We find that the Court can properly consider Defendants' Summary Judgment Motion  in this case.  We do not find that Defendants waived the failure to exhaust affirmative defense  simply because they did not raise it in their Motion to Dismiss.   Also, to date, Defendants have not filed an Answer to either Plaintiff 's original Complaint or Plaintiff 's Amended Complaint.  Further, we agree with Defendants that they have raised the exhaustion issue well before a trial in this case and that Plaintiff has not articulated any prejudice by the manner in which Defendants have raised the exhaustion issue.

As stated above, it is undisputed that Plaintiff did not exhaust  her DOC administrative remedies  with respect to the March 3, 2011 assault incident at SCI-Muncy and with respect to any of her instant constitutional claims against Defendants.  Plaintiff essentially contends that she should be excused from the exhaustion requirement since she was "physically and emotionally unable to timely [file a grievance pertaining to the March 3, 2011 assault]." (Doc. 35-1, ¶ 18).  In her Affidavit, Plaintiff avers that "[s]ince March 3, 2011[,] I have had absolutely no memory of the beating, I am having memory problems, I never had any access to grievance

materials while I was incarcerated at SCI-Muncy, I presently do not have the mental capacity to do much of anything, and obviously, when I was released from SCI-Muncy, I did not have access to SCI-Muncy's grievance procedures." (Doc. 35-3, p. 25, ¶ 26).   Further, Plaintiff avers that after the March 3, 2011 assault incident, she was taken to the Geisinger Medical Center where she remained  for three days.   When she was returned to SCI-Muncy, Plaintiff avers she was housed in the prison infirmary for about one (1) and a half months.   Plaintiff avers that she did not have access to any forms to complete in the infirmary and even if she did, she would not have known what to put in the forms since she had no memory of the March 3, 2011 incident.   Plaintiff states that after being housed in the infirmary, she was transferred to the I Unit at SCI-Muncy, which she believes was a unit for inmates dealing with traumatic events. Plaintiff seems to recall to have met with a prison counselor in the I Unit.    Plaintiff also avers that she was paroled from SCI-Muncy on May 9, 2011, and sent to a halfway house (Alkins House) in York, PA.   (Doc. 35-3, pp. 23-24, ¶'s 13- 16).

Insofar as Plaintiff avers that "when [she] was released from SCI-Muncy, [she] did not have access to SCI-Muncy's grievance procedures," Doc. 35-3, p. 25, ¶ 26, we take judicial notice that the applicable grievance procedure was the DOC's and that generally inmates who are in custody of the DOC receive a copy of the Inmate Handbook which contains portions of the DOC's grievance policy, DC-ADM 804.  *See Montanez v. Beard*, 2012 WL 6917775 (M.D. Pa. Aug. 10, 2012) adopted by 2013 WL 231064 (M.D. Pa. Jan. 22, 2013).   Thus, Plaintiff should have received the Inmate Handbook outlining the DOC's grievance procedures when she was taken into custody by the DOC on or about February 28, 2011.  Also, Plaintiff does not

claim that she failed to receive the Inmate Handbook outlining the DOC's grievance procedures.

"It is well-settled that where there are factual questions concerning the extent of an inmate's efforts to exhaust [her] grievances summary judgment in favor of the Defendants clearly is not appropriate." *Williams v. Bledsoe*, 2013 WL 5522848, *18 (M.D. Pa. Oct. 3, 2013)(citations omitted). However, in the present case, there are no factual disputes that Plaintiff Wakeley did not file or attempt to file any grievance with respect to the March 3, 2011 assault and with respect to her constitutional claims. Further, as Defendants point out the exhaustion issue is a legal question for the Court to decide, "even if that determination requires the resolution of disputed facts." (Doc. 36, p. 2). Defendants cite to the recent Third Circuit case of *Small v. Camden County*, 728 F.3d 265 (3d Cir. 2013) and to *Breeland v. Fisher*, 2013 U.S. Dist. LEXIS 158904, 2013 WL 5935046 (M.D. Pa. Nov. 5, 2013) ("Whether an inmate has exhausted administrative remedies is a question of law that is to be determined by the court, even if that determination requires the resolution of disputed facts.")(citing *Small v. Camden County*, *supra*). *See also Breeland v. Cook*, 2013 WL 5924592 (M.D. Pa. Oct. 31, 2013)(citing *Small v. Camden County*, *supra*).

"The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow." *Rogers v. U.S.*, 696 F.Supp.2d 472, 483 (W.D.Pa. 2010)(citing *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000)).

Furthermore, because the exhaustion issue is a threshold issue and because it is undisputed Plaintiff failed to exhaust her DOC administrative remedies, we find that the Court

15

does not need to first address Defendants' pending Motion to Dismiss and their contentions that Plaintiff 's Amended Complaint fails to state constitutional claims against them. *See Lasko v. Hendershot*, 2006 WL 2828787 (M.D. Pa. 9-29-06); *Hookey v. Lomas*, 2010 WL 936230, *6 (M.D. Pa. 3-15-10); *Wallace v. Miller*, —Fed.Appx.—, 2013 WL 5878903, *2 n. 2 (3d Cir. Nov. 4, 2013).  Nor do we find  that Defendants' pending Motion to Dismiss, which was filed prior to Defendants' Summary Judgment Motion, precludes the latter motion filed by Defendants. Thus, we do not find that there is a genuine issue at this time as to whether Plaintiff exhausted her claims regarding the March 3, 2011 assault.  Rather, the issue is whether Plaintiff should be excused from the exhaustion requirement since she was allegedly "physically and emotionally unable to timely [file a grievance pertaining to the March 3, 2011 assault]."  As such, we do not find that Defendants' Summary Judgment Motion based solely on Plaintiff's failure to exhaust her March 3, 2011 assault claims is premature.  Nor do we find that Defendants' Summary Judgment Motion should be struck by the Court as Plaintiff suggests.   Additionally, we agree with Defendants that there is no need for the Court to allow discovery in this case since the evidence submitted by the parties is more than sufficient for the Court to decide the exhaustion issue.

As discussed below, we find that Plaintiff fails to show that the DOC grievance system was unavailable to her for exhaustion purposes. *See Wallace v. Miller*, —Fed.Appx.—, 2013 WL 5878903 (3d Cir. Nov. 4, 2013).  We also find that Defendants have demonstrated that Plaintiff Wakeley did not properly exhaust her DOC administrative remedies prior to filing this case. Plaintiff was required to have filed her grievance for initial review regarding her claims about

the March 3, 2011 assault incident with the prison Grievance Coordinator by March 24, 2011. (*See* Doc. 34, p. 18, ¶ A. 13). There is no dispute that Plaintiff did not timely file a grievance regarding the March 3, 2011 assault. Nor is there any dispute that Plaintiff did not request an extension of time from the prison Grievance Coordinator to file a grievance which is allowed in some cases by the DOC policy. (*See* Doc. 34, p. 19, ¶ B. 3).

Moreover, insofar as Plaintiff contends that under the Prison Rape Elimination Act ("PREA"), 42 U.S.C. §15601, *et seq.*, she does not have a time limit with respect to filing a grievance regarding her claims about the March 3, 2011 assault incident, we agree entirely with Defendants that Plaintiff's contention is without merit. Plaintiff relies upon the federal regulation found at 28 C.F.R. §115.52(b)(1), which provides, in part, that "[t]he agency shall not impose a time limit on when an inmate may submit a grievance regarding an allegation of **sexual abuse**." (Emphasis added). Since Defendants fully quote the relevant portions of this regulation in their reply brief, we do not repeat the entire regulation herein. (Doc. 36, p. 5). At the outset, as Defendants correctly point out, the effective date of the regulation was August 20, 2012, and the March 3, 2011 assault incident involving Plaintiff occurred over one year before the effective date. We do not find any authority which would make the regulation found at 28 C.F.R. §115.52(b)(1) to apply retroactively to Plaintiff.

Also, as Defendants point out, the stated regulation "does not excuse the outright failure to file a grievance as required by the PLRA." *(Id.,* p. 6). *See, eg., Wells v. Fallen*, 2013 WL 4538055 (D.S.C. Aug. 6, 2013). As stated above, there is no dispute in our case that Plaintiff did not file any grievance, at any time, regarding the March 3, 2011 assault incident. Further,

we agree with Defendants that Plaintiff's instant constitutional claims essentially allege an Eighth Amendment failure to protect claim that Defendants should have known inmate Houston required to be single celled, and not celled with Plaintiff, based on Houston's violent history.[5] Plaintiff does not allege that Defendants or any prison staff member sexually abused her. The regulation found at 28 C.F.R. §115.52(b)(2) provides that "[t]he agency may apply otherwise-applicable time limits to any portion of a grievance that does not allege incident of sexual abuse."

Thus, we agree with Defendants that the PREA and the stated regulation do not apply in the present case to excuse Plaintiff Wakeley's failure to have ever filed a grievance about the March 3, 2011 incident.

We now consider whether Plaintiff's contentions that she was mentally and physically incapable of filing a grievance and, that she did not have access to grievance materials excuse her failure to have exhausted her DOC administrative remedies.

---

[5]Under the Eighth Amendment, prison officials have a duty "to take reasonable measures to protect prisoners from violence at the hands of other prisoners." *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (internal citations omitted).
In *Glazewski v. Corzine*, 385 F. App'x 83, 88 (3d Cir. 2010), the Court stated:
To establish a failure to protect claim, an inmate must demonstrate that: (1) he is "incarcerated under conditions posing a substantial risk of serious harm;" and (2) the prison official acted with "deliberate indifference" to his health and safety. *Farmer,* 511 U.S. at 834, 114 S.Ct. 1970. "[T]he official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." *Beers-Capitol v. Whetzel,* 256 F.3d 120, 133 (3d Cir. 2001).

A prisoner is barred from bringing a civil rights action in federal court "until such administrative remedies as are available have been exhausted." 42 U.S.C. §1997e(a). As the Courts have repeatedly held, it is well-settled that the Plaintiff inmate must exhaust his administrative remedies prior to filing a civil rights suit. *See Mitchell v. Dodrill*, 696 F.Supp.2d 454 (M.D. Pa. 2010); *Ahmed v. Dragovich*, 297 F.3d 201, 209 & n. 9 (3d Cir. 2002). "A prisoner may not satisfy the exhaustion requirement after the filing of his complaint." *Wallace v. Miller*, —Fed.Appx—, 2013 WL 5878903, *2 (3d Cir. Nov. 4, 2013)(citing *Ahmed v. Dragovich*, *supra*).

In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prison conditions, including § 1983 actions or actions brought pursuant to any other federal law. The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.; Woodford v. Ngo,* 126 S Ct. 2378 (2006); *Fortune v. Bitner*, 2006 WL 2769158, *7 (M.D.Pa.)("The PLRA mandates that inmates 'properly' exhaust administrative remedies before filing suit in federal court.")(citation omitted). Further, as mentioned, the Defendants have  the burden to plead and prove exhaustion as an affirmative defense. *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002); *Fortune v. Bitner*, 2006 WL 2769158, *7.

"A prisoner must exhaust all available administrative remedies before initiating a federal lawsuit." *Lombardi v. Pugh*, 2009 WL 1649908, *3(M.D. Pa. 6-9-09)(citation omitted). Further,

"the exhaustion requirement is not satisfied if the inmate files an action in the district court prior to completing the administrative remedy process." *Id*.(citation omitted); *See also Mitchell v. Dodrill*, 696 F.Supp.2d at 463-64(Court stated that "most circuit courts are in agreement that a prisoner may not satisfy the PLRA's exhaustion requirement by exhausting administrative remedies *after* initiating suit in federal court.")(emphasis original)(citations omitted).

The Third Circuit has repeatedly stated that the PLRA "requires that inmate-Plaintiffs exhaust all administrative remedies prior to filing suit in federal court." *Banks v. Roberts*, 2007 WL 3096585, * 1 (3d Cir. 10-19-07)(Non-Precedential) (citation omitted); *Wallace v. Miller*, —Fed.Appx—, 2013 WL 5878903, *2. The *Banks* Court also noted that a futility exception to the PLRA's mandatory exhaustion requirement is completely precluded. *Banks v. Roberts*, 2007 WL 3096585, * 1; *Spruill v. Gillis,* 372 F. 3d 218, 228-230 (3d Cir. 2004); *see also Nyuis v. Reno*, 204 F.3d 65, 71 (3d Cir. 2000); *Cooper v. Sniezek*, 2010 WL 3528848, *7-*8 (M.D. Pa. 9-7-10); *Mitchell v. Dodrill*, 696 F.Supp.2d at 463-64.

The *Cooper* Court stated:

> A prisoner must exhaust administrative remedies as to any claim that arises in the prison setting, regardless of any limitations on the kind of relief that may be gained through the grievance process. *See Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *Booth v. Churner,* 532 U.S. 731, 741 n. 6, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). "[I]t is beyond the power ... of any ... [court] to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." *Nyhuis v. Reno,* 204 F.3d 65, 73 (3d Cir.2000) (quoting *Beeson v. Fishkill Corr. Facility,* 28 F.Supp.2d 884, 894-95 (S.D.N.Y.1998) (citing *Weinberger v. Salfi,* 422 U.S. 749, 766, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975)). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." *Nyhuis,* 204 F.3d at 71. The PLRA also mandates that an inmate "properly" exhaust administrative remedies before filing suit in federal court. *Woodford v. Ngo,* 548 U.S. 81, 92, 126 S.Ct.

20

2378, 165 L.Ed.2d 368 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."*Id.* at 90-91. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 93 (quoting *Nussle,* 534 U.S. at 525). Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. *Spruill v. Gillis,* 372 F.3d 218, 227-32 (3d Cir.2004).

2010 WL 3528848, *7.

As discussed, there is no dispute that the DOC administrative remedy process applies to claims like Plaintiff Wakeley asserts in this case and, that Plaintiff did not file any grievance regarding her claims about the March 3, 2011 assault incident.  Plaintiff's grievance was due by March 24, 2011, fifteen (15) working days after the incident. Nor is it disputed that Plaintiff did not request an extension of time to file a grievance after she was returned to SCI-Muncy from the hospital on March 8, 2011, as was allowed in certain instances under the DOC Grievance Policy, DC-ADM 804.   Rather, Plaintiff claims that she was totally incapacitated by the assault incident and has no memory of it, and that she never had access to grievance materials at SCI-Muncy.   Thus, Plaintiff essentially contends that she should be completely excused from exhaustion.

The Court in *McMillian v. Walsh*, 2014 WL 310391, *8 (M.D.Pa. January 28, 2014), stated as follows:

> This broad rule favoring full exhaustion admits of one, narrowly defined exception. If the actions of prison officials directly caused the inmate's procedural default on a grievance, the inmate will not be held to strict

compliance with this exhaustion requirement. *See Camp v. Brennan,* 219 F.3d 279 (3d Cir.2000). However, case law recognizes a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." *Davis v. Warman,* 49 F. App'x 365, 368 (3d Cir.2002). Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances", *Harris v. Armstrong,* 149 F. App'x 58, 59 (3d Cir.2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." *Davis v. Warman, supra,* 49 F. App'x at 368. *See also Brown v. Croak,* 312 F.3d 109, 110 (3d Cir.2002) (assuming that prisoner with failure to protect claim is entitled to rely on instruction by prison officials to wait for outcome of internal security investigation before filing grievance); *Camp v. Brennan,* 219 F.3d 279, 281 (3d Cir.2000) (exhaustion requirement met where Office of Professional Responsibility fully examined merits of excessive force claim and uncontradicted correctional officers impeded filing of grievance).

However, in the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances, inmate requests to excuse a failure to exhaust are frequently rebuffed by the courts. Thus, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. *Harris v. Armstrong,* 149 F. App'x 58, 59 (3d Cir.2005). Nor can an inmate avoid this exhaustion requirement by merely alleging that the Department of Corrections policies were not clearly explained to him. *Davis v. Warman,* 49 F. App'x 365, 368 (3d Cir.2002). Furthermore, an inmate's confusion regarding these grievances procedures does not, standing alone, excuse a failure to exhaust. *Casey v. Smith,* 71 F. App'x 916 (3d Cir.2003). Moreover, an inmate cannot cite to alleged staff impediments to grieving a matter as grounds for excusing a failure to exhaust, if it also appears that the prisoner did not pursue a proper grievance once those impediments were removed. *Oliver v. Moore,* 145 F. App'x 731 (3d Cir.2005) (failure to exhaust not excused if, after staff allegedly ceased efforts to impede grievance, prisoner failed to follow through on grievance).

We find that Plaintiff Wakeley does not claim that any actions of Defendants directly caused her failure to file a grievance. Rather, Plaintiff claims that she fits into the narrow exception since there was an extraordinary reason she was prevented from complying with the statutory exhaustion mandate, namely, she was physically and mentally incapable of filing a

grievance at any time.   We agree with Defendants that the vast majority of the evidence does not support Plaintiff's contention.   Initially, Defendants correctly state that "[s]uch arguments have been rejected by the courts."   (Doc. 36, p. 7).   Defendants cite, in part, to *Shrubb v. Warden, Jefferson County Prison*, 489 Fed. Appx. 526 (3d Cir. 2012), in which the Third Circuit held that inmate's claim "that he was unable to file a grievance because he was in the middle of a 'psychotic break'" did not excuse him from exhausting his administrative remedies.

In the present case, we do not find that Plaintiff's medical records show that she was incapable of filing a grievance by the March 24, 2011 deadline.   We also find that Plaintiff 's records do not explain why she failed to request an extension of time to file a grievance and why she never filed a grievance regarding the March 3, 2011 assault.   Further, we find that Defendants' evidence shows Plaintiff had access to the DOC administrative remedy process after the assault incident.

As Defendants state (*Id.*, p. 8), when Plaintiff returned to SCI-Muncy on March 8, 2011, her medical records show that she was "alert, oriented to person, place and time," and that she responded to questions properly. Plaintiff was able to name the President, the month and the year.  Plaintiff also had a neurological check which was "unremarkable." (Doc. 35-3, pp. 2-5).

Defendants also correctly summarize Plaintiff's medical records from March 9 through March 14, 2011, and we do not repeat the summary herein.  (*Id.*, pp. 8-9).   In fact, Plaintiff's medical records show she discussed the assault incident as well as her feelings toward Houston on March 11, 2011, contrary to her averments in her Affidavit that she had no memory of it. Also, on March 11, 2011, Plaintiff was "alert and cooperative" and, she had good judgment and

insight into the assault incident.  We find that Plaintiff's stated records show that on March 11, 2011, Plaintiff could remember portions of the March 3, 2011 assault incident and remembered inmate Houston.  (Doc. 35-3, pp. 14-17).

Moreover, Defendants' Supplemental Appendix shows beyond dispute that Plaintiff was capable of filing a grievance by the March 24, 2011 deadline and was capable of filing a request for an extension if she was still unsure of all of the facts surrounding the assault. Since Defendants thoroughly summarize the DOC records after the assault incident, including Plaintiff's statements about it,  from March 4 through March 16, 2011 and we do not fully repeat the summary herein.  (*Id.*, p. 9).  For example, March 14, 2011, a prison physician found that Plaintiff "looks 90% back to normal."   In fact, Plaintiff was able to discuss the assault with the PA State Police on March 16, 2011, and remembered that Houston choked her, that she told Houston she was going to push the alert buzzer and, that Houston then choked her again, and said "you bitches are all the same." (Supple. App., Doc. 37, Ex. G).  Even though Plaintiff did not remember the entire assault incident, we find that the records show she had sufficient memory of the assault to file a grievance regarding her failure to protect claim against Defendants or, at a minimum, to file a request for an extension of time to file a grievance until she could gather more of the details.  For instance, on March 10, 2011, Plaintiff was interviewed by a prison investigator and she recalled being assaulted by Houston.  Plaintiff also recalled Houston choking her on the floor under a table, and that Houston said "all you bitches are all the same."   (Doc. 37, Ex. H).

24

On March 14, 2011, Plaintiff received a psychiatric evaluation by a DOC consulting psychiatrist (Dr. Brickhouse, M.D.) and she was found to be alert and cooperative, her responses were mostly reliable, and she appeared to be recovering from the assault incident.  Plaintiff had no psychosis and no mania, and she did not appear to overly traumatized.  Also Plaintiff was not found to be suffering from any acute stress disorder symptoms.  Overall, Plaintiff 's judgment and insight  appeared to be very good, and she felt some remorse for Houston as well as appropriate feelings of anger. (Doc. 37, Exs. I & K).

Additionally, Defendants correctly state that the DOC records show as follows:

Mental Health Contact Notes indicate on March 16th, March 19th and March 25th, Plaintiff appeared with normal limits. [Doc. 37, Ex. J], Mental Health Contact Notes. [Plaintiff 's] feeling was expressive. *Id.*  Her insight and perceptions were within normal limits.  *Id.*  Plaintiff 's thinking was logical, memory intact and she was orientated to person, place and time.  *Id.*  Finally, [o]n March 24th, Plaintiff was able to relate to a psychologist additional details of the assault that she learned from the state police.  *Id.* [Doc. 37] at K, Addendum.

(Doc. 36, p. 10).

The overwhelming evidence clearly shows that Plaintiff was competent and  was well aware of sufficient facts about the March 3, 2011 assault to file a grievance by March 24, 2011. The records also show that Plaintiff was mentally capable to have filed a request for an extension of time to file a grievance.  We find that Plaintiff's averments in her Affidavit about her physical and mental conditions after the assault do not constitute medical evidence and are not sufficient to dispute the DOC medical records we have discussed above. We agree with Defendants that "Plaintiff 's conclusory [Affidavit] to the contrary is insufficient to create a triable

issue." (*Id.*).  Defendants correctly cite, in part,  to *Jackson v. Taylor*, 467 Fed.Appx. 98, 99-100 (3d Cir. 2012).   We find that Plaintiff Wakeley's Affidavit (Doc. 35-3, pp. 21-26) containing only conclusory and unsupported averments that she had "absolutely no memory of the beating," that she is having memory problems, and that she never had any access to any grievance materials while she was confined at SCI-Muncy  do not create genuine issues of material fact that she was physically and mentally incapable of ever filing a grievance regarding the March 3, 2011 assault incident.   In light of the DOC records, which we have discussed above, we find that Plaintiff had enough memory and information about the assault to file a grievance by March 24, 2011, and that she had full access to the grievance process after the incident. We find that Plaintiff's unsubstantiated Affidavit does not create disputed issues regarding these facts.  *See Doe v. Allegheny County*, 2013 WL 1290686, *14 (W.D. Pa. March 27, 2013)(citing, in part, *Longstreet v. Holy Spirit Hosp*., 67 Fed.Appx. 123, 126 (3d Cir. 2003)("A Plaintiff cannot rely upon 'unsupported assertions, speculation, or conclusory allegations to avoid a motion for summary judgment.'")(citation omitted)).

As her penultimate contention, Plaintiff claims that grievance forms were not available to her while she was confined at SCI-Muncy.  As mentioned, Plaintiff specifically avers in her Affidavit that "I never had any access to grievance materials while I was incarcerated at SCI-Muncy."  (Doc. 35-3, p. 25, ¶ 26).  It is certainly correct that in *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003), the Third Circuit "held that a failure to exhaust would be excused when the forms necessary to file a grievance were not made available."  *Ball*, 385 Fed.Appx. at 214.  As stated above, Plaintiff does not claim that any actions of Defendants (or prison officials) directly

caused her failure to file a grievance and, she does not claim that Defendants (or prison officials) directly caused her procedural default on a grievance.  Nor does Plaintiff allege that Defendants (or prison officials) obstructed her from filing a grievance.  "Moreover, an inmate cannot cite to alleged staff impediments to grieving a matter as grounds for excusing a failure to exhaust, if it also appears that the prisoner did not pursue a proper grievance once those impediments were removed."  *Watson v. Beard*, 2013 WL 4648323, *6 (W.D. Pa. Aug. 28, 2013)(citing *Oliver v. Moore*, 145 Fed.Appx. 731 (3d Cir. 2005)). As stated, in the present case, it is not disputed that Plaintiff Wakeley did not file any grievance at any time regarding the March 3, 2011 assault incident.

The undisputed evidence shows that after the assault incident, Plaintiff returned to SCI-Muncy from the hospital on March 8, 2011, and she was housed in Unit 10, and then she was transferred to I Unit.  (Doc. 35-3, ¶ 15 & Supple. App., Doc. 37, Ex. L). Gloria Diggan, SCI-Mucny Corrections Health Care Administrator, avers in her Declaration that she remembers Plaintiff being housed in the prison's only medical unit after returning from the hospital, and that "[d]uring March of 2011, the inmates did and still do have access to grievance forms in the medical housing unit."  Diggan states that inmates could ask staff for a grievance and that staff made rounds in the unit every half hour. In fact, the DOC medical records of Plaintiff show that staff noted Plaintiff 's progress throughout the day when she was in the medical unit. (Doc. 35-3).  Diggan avers that she interacted with Plaintiff on almost a daily basis when Plaintiff was in the medical unit and that Plaintiff "was capable of requesting, completing and filing a grievance regarding the assault."  In fact, Diggan avers that the mailbox to submit a grievance was right

27

outside of Plaintiff 's room.  (Doc. 37, Ex. L).

Ms. Lucas avers in her Declaration that housing unit reports reveal that other inmates were able to file grievances from the housing units where Plaintiff was housed during the relevant time period.  (Supple. App., Doc. 37, Ex. M).    As stated, Plaintiff remained at SCI-Muncy until  May 9, 2011.  (Doc. 33, p. 3, ¶ 11).

Thus, with respect to Plaintiff's argument that grievance forms were not available to her when she was confined at SCI-Muncy, we find, as a legal question, the evidence  shows that the DOC grievance system was in fact available to Plaintiff when she was returned to SCI-Muncy well before her March 24, 2011 deadline.  We find that Plaintiff 's conclusory averment in ¶ 26 of her Affidavit insufficient to create a genuine issue of fact.

At bottom, we find the undisputed evidence to show that Plaintiff failed to file a grievance regarding her instant constitutional claims against Defendants about the March 3, 2011 assault incident at SC-Muncy and, that she failed to exhaust her DOC administrative remedies.

Thus, as the Court in *McMillian v. Walsh*, 2014 WL 310391, *7, recently stated:

> courts have also imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. *Spruill v. Gillis,* 372 F.3d 218 (3d Cir.2004). Applying this procedural default standard to § 1997e' s exhaustion requirement, courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court. *See, e.g., Booth v. Churner,* 206 F.3d 289 (3d Cir.2000); *Bolla v. Strickland,* 304 F. App'x 22 (3d Cir.2008); *Jetter v. Beard,* 183 F. App'x 178 (3d Cir.2006).

We find that since Plaintiff Wakeley failed to file a grievance and complete the DOC administrative remedy process, which we find was available to her, she is barred from pursuing her instant §1983 action against Defendants.  We find that Plaintiff Wakeley's failure to exhaust the DOC administrative remedies resulted in a procedural default.  *See Shrubb*, 489 Fed.Appx. 527-28.  As such, we will recommend that Defendants' Motion for Summary Judgment (Doc. 31) be granted, and that Judgment be entered in favor of all Defendants and against Plaintiff Wakeley.  We will also recommend that Defendants' pending Motion to Dismiss (Doc. 23) be denied as moot.[6]

---

[6]We recognize that our findings in this case, namely, that Plaintiff Wakeley failed to file a grievance and complete the available DOC administrative remedy process and that Plaintiff's failure to exhaust her DOC administrative remedies resulted in a procedural default, create a harsh result preventing Plaintiff from proceeding on her constitutional claims alleging egregious conduct and severe injuries.  However, we are constrained by our interpretation of the facts and the law as we have discussed above.

**VI.     RECOMMENDATION.**

We respectfully recommend that Defendants' Motion for Summary Judgment **(Doc. 31)** be granted, and that Judgment be entered in favor of all Defendants and against Plaintiff Wakeley.  We further recommend that Defendants' pending Motion to Dismiss **(Doc. 23)** be denied as moot. Finally, we recommend that this case be closed.

 **s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: February 18, 2014**

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOSETTE M. WAKELEY, | : | CIVIL ACTION NO. **1:CV-12-2610** |
| | : | |
| Plaintiff | : | (Judge Caldwell) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| SUPERINTENDENT GIROUX, *et al.*, | : | |
| | : | |
| Defendants | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **February 18, 2014.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the
> magistrate judge, making his or her own determination on the basis

of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to the foregoing Report and Recommendation may

constitute a waiver of any appellate rights.


                          **s/ Thomas M. Blewitt**
                          **THOMAS M. BLEWITT**
                          **United States Magistrate Judge**

**Dated:  February 18, 2014**